UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO CHAN MAY (A-213-045-700), | No. 1:26-cv-3426 DAD CSK |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN of the Golden State Annex Detention Facility, et al., | |
| Respondents. | |

Petitioner Armando Chan May (A-213-045-700), a native and citizen of Mexico who entered the United States without inspection in 1999 or 2000, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  In March 2017, petitioner was placed in immigration proceedings after being arrested for criminal charges for which he was not convicted.  On July 13, 2018, petitioner pled guilty to false imprisonment, and was taken into immigration custody thereafter.  On July 16, 2018, an immigration judge found petitioner was not a flight risk or danger to the community and released petitioner upon payment of a bond.  On or about April 16, 2026, petitioner reported to immigration officials as directed, and was re-detained.  This habeas action concerns petitioner's April 16, 2026 re-detention.  For the reasons that follow,

---

[1]  Petitioner paid the filing fee and is proceeding through counsel.  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

## I.       FACTUAL BACKGROUND[2]

Petitioner, a 43-year-old native and citizen of Mexico, entered the United States without inspection in 1999 or 2000, and has resided in the United States continuously since that time. (ECF No. 1 at 6.)  In 2017, petitioner was arrested for violating California Penal Code § 422 for criminal threats and § 273.5 for domestic violence, but petitioner was not convicted.  (Id. at 6.)  This was petitioner's first interaction with immigration authorities.  (ECF No. 1 at 6.)  On March 29, 2017, petitioner was released on an order of recognizance, and placed in standard 8 U.S.C. § 1229a removal proceedings.[3]  (Id. at 6, 7; ECF Nos. 5 at 1-2; 5-1 at 2 (Form I-213).)

On or about March 15, 2018, petitioner was arrested.  (ECF No. 1 at 6.)  Court records reflect petitioner was charged with violating California Penal Code § 273.5(A) for felony willful infliction of corporal injury, § 591.5 for misdemeanor damage to wireless communication, and § 236 for felony false imprisonment).  (ECF No. 5-2 at 1.)  On March 22, 2018, petitioner was released from state custody on bail.  (Id. at 4.)  Petitioner subsequently pled guilty to violating California Penal Code § 236 for felony false imprisonment.  (ECF Nos. 1 at 6; 5-2 at 1.)  The remaining charges were dismissed in the interest of justice.  (ECF No. 5-2 at 1.)  Petitioner was sentenced to 150 days in jail, three years probation, 40 hours of community service, payment of restitution, and payment of various fines and fees.  (Id. at 7-10.)  Petitioner completed all 52 court-ordered anger management classes and paid all relevant fines.  (ECF No. 1 at 6.)

Petitioner was taken into immigration custody thereafter.  (ECF No. 1 at 6.)  On July 16, 2018, at a bond redetermination hearing, an immigration judge found petitioner was not a flight

---

[2]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 20.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[3]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).  Respondents do not contest that petitioner was subject to standard removal proceedings.  (See ECF No. 5.)

2

risk or danger to the community and released petitioner upon payment of a $1,500 bond.  (Id.; ECF No. 5-1 at 2.)

On February 12, 2019, petitioner filed an application for cancellation of removal, which is still pending.  (Id.)

On September 28, 2021, petitioner's 2018 conviction for violating California Penal Code § 236 for felony false imprisonment was set aside and dismissed pursuant to California Penal Code § 1203.4.  (ECF No. 5-3 at 7; ECF No. 6 at 1-2.)

On or about April 16, 2026, pursuant to a "Notice to Obligor to Deliver Alien," petitioner and the obligor appeared at the offices of Immigration and Customs Enforcement ("ICE") for an interview.  (ECF No. 1 at 6; see ECF No. 5-1 at 2 (interview date listed as March 16, 2026, but I-213 dated April 16, 2026).)  At that time, petitioner was taken into ICE custody.  (ECF No. 1 at 6.)  When asked why petitioner was being detained, the officer said they had information petitioner was arrested again for domestic violence.  (Id.)  Respondents have submitted petitioner's rap sheet that indicates a January 28, 2024 entry for forcible rape, but the rap sheet does not indicate whether petitioner was actually arrested, and respondents concede the claim was dropped on February 1, 2024 due to lack of sufficient evidence.  (ECF No. 5 (citing petitioner's RAP sheet (ECF No. 5-3 at 7)).)

Petitioner alleges that this is incorrect because he has not been arrested since 2018.  (ECF No. 1 at 6.)  Petitioner submitted a January 28, 2024 Novato Police Department report that indicates that petitioner was the victim of a domestic violence incident that involved his wife.  (ECF No. 6-1.)  On January 28, 2024, petitioner's wife was arrested for California Penal Code § 273.5(A) inflicting corporal injury.  (Id. at 10.)  The police report indicates that petitioner's wife changed her statement several times, was under the influence of alcohol, and after petitioner's wife was arrested, she accused petitioner of sexual assault.  (ECF No. 6-1 at 8, 10.)  On June 14, 2024, petitioner was granted a restraining order against his wife.  (Id. at 33.)  The protective order was terminated on February 21, 2025, the same day the misdemeanor battery charges against petitioner's wife were dismissed by the prosecution.  (Id. at 31-33.)

///

3

Because respondents do not assert that petitioner was arrested in January 2024 or that petitioner's current detention is based on the alleged January 2024 incident, the Court need not resolve this dispute. The Court notes, however, that the record before the Court indicates that petitioner was the victim of a domestic violence incident in January 2024. (See ECF No. 6-1.)

Petitioner has lived in the United States for at least 26 years. Petitioner has three children who are United States citizens; the youngest is six years old and has autism. (ECF No. 1 at 6.) U.S. Citizenship and Immigration Services ("USCIS") granted petitioner an employment authorization document, and he is self-employed, specializing in storm and water management and drainage solutions. (Id. at 7.) Petitioner has been in ICE detention since April 16, 2026. (Id. at 6.)

## II.    PROCEDURAL BACKGROUND

On May 4, 2026, petitioner, through counsel, filed his verified petition for writ of habeas corpus. (ECF No. 1.) On May 13, 2026, respondents filed their answer. (ECF No. 5.) On May 20, 2026, petitioner filed a reply. (ECF No. 6.) On May 21, 2026, petitioner filed a notice of supplemental authority. (ECF No. 7.) Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

///

///

4

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his continued detention based on violation of the Immigration and Naturalization Act ("INA") (claim one); violation of petitioner's procedural due process rights under the Fifth Amendment (claim two); violation of the Administrative Procedure Act ("APA") (claims three and four), citing abuse of discretion under 8 U.S.C. § 1226(b) and revocation by unauthorized officials under 8 C.F.R. § 1236.1(c)(9).  (ECF No. 1 at 12-18.)  Respondents argue that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) based on his 2018 felony conviction.[4]  (ECF No. 5 at 1-4.)  Respondents further contend petitioner's detention is constitutional because he will only be detained until his removal proceedings are completed; thus, his detention is not indefinite.  (Id. at 4-7.)  In addition, respondents argue that as an "applicant for admission," petitioner's detention is also mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (Id. at 7-8.)  Respondents cite Avila v. Bondi, No. 25-3741, 2026 WL 819258 (8th Cir. Mar. 25, 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b)(2)(A) is applicable here.  (Id. at 7.)  Respondents contend that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id. at 8.)  Further, respondents argue that if the Court grants habeas relief, the proper remedy is to order a bond hearing at which petitioner bears the burden of proving he is not a flight risk or danger to the community.  (Id. at 8-9 (citing Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022)).)

///

///

---

[4]  Respondents also incorrectly assert petitioner was convicted of robbery under California Penal Code § 211, citing to Exhibits 3 and 4.  (ECF No. 5 at 3, citing "Exs. 3, 4.")  However, as pointed out by petitioner (ECF No. 6 at 2), this appears to be an error because respondents do not mention this conviction elsewhere and there is no exhibit 4.  Because the alleged robbery conviction appears to be an error, this Court does not address it further.

**A.    Statutory Claim (Claim One)**

In analyzing petitioner's challenge to his detention, the court "must first identify the statutory provision that purports to confer" authority for his detention.  Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).  Respondents argue that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(A) because his 2018 felony false imprisonment conviction renders him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) where felony false imprisonment constitutes a crime involving moral turpitude.  (ECF No. 5 at 3-4 (citing People v. Cornelio, 255 Cal. Rptr. 775, 778 (Cal. Ct. App. 1989).)

Petitioner contends that his 2018 conviction for felony false imprisonment under California Penal Code § 236 is not a categorical crime involving moral turpitude under controlling Ninth Circuit authority, and the conviction was set aside and dismissed in 2018.  (ECF No. 6 at 2; ECF No. 7.)

1.    Effect of Expungement of 2018 False Imprisonment Conviction

The Court first examines the effect of the expungement of petitioner's 2018 conviction for California Penal Code § 236 felony false imprisonment.  The record reflects that petitioner's 2018 conviction was expunged under California Penal Code § 1203.4.  (ECF No. 5-3 at 7.)  Though respondents submitted documents that show that the 2018 conviction was expunged, respondents do not address this expungement.  (See id; ECF No. 5.)  Petitioner admits the Ninth Circuit has held that § 1203.4 expungement does not categorically eliminate a conviction for immigration purposes, but argues that the expungement remains highly relevant.  (ECF No. 6 at 6-7.)  Petitioner contends that the expungement confirms that the State of California has formally relieved petitioner of the consequences of his only conviction, which bears directly on whether continued no-bond detention serves any nonpunitive purpose, and demonstrates "how thin the Government's case really is:  there is no current adjudication of danger, no parole violation, no new conviction, and no individualized finding of any kind tying petitioner's 2018 conduct to a 2026 detention decision."  (Id. at 7.)

"[A]s a general rule, an expunged conviction qualifies as a conviction under the INA." Ramirez-Castro v. INS, 287 F.3d 1172, 1174 (9th Cir. 2002) (citing Murillo-Espinoza v. INS, 261

F.3d 771, 774 (9th Cir. 2001)); see also Nunez-Reyes v. Holder, 646 F.3d 684, 690 (9th Cir. 2011) (en banc) (holding that an expunged state conviction still qualifies as a "conviction" for federal immigration purposes).  In particular, "a conviction expunged under [California Penal Code § 1203.4] remains a conviction for purposes of federal law" because § 1203.4 "provides only a limited expungement, even under state law."  Ramirez-Castro, 287 F.3d at 1175.

As such, for the purpose of analyzing the statutory basis for petitioner's re-detention by ICE, the Court proceeds to analyze whether petitioner is properly detained pursuant to 8 U.S.C. § 1226(c) based on petitioner's 2018 conviction even though this conviction was expunged.

2.      Section 1226(c)

Respondents contend that petitioner is mandatorily detained pursuant to § 1226(c)(1)(a) based on petitioner's 2018 conviction because felony false imprisonment is a crime involving moral turpitude.  (ECF No. 5 at 3-4.)  Petitioner argues that under Ninth Circuit law, felony false imprisonment is not a categorical crime involving moral turpitude.  (ECF No. 7; see ECF No. 6 at 6.)

Section 1226(c)(1) mandates detention for "any alien who—is inadmissible by reason of having committed any offense covered in Section 1182(a)(2) of this title."  8 U.S.C. § 1226(c)(1)(A).  Section 1182(a)(2)(A)(i)(I) applies to "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime."  8 U.S.C. § 1182(a)(2)(A)(i)(I).  Pursuant to § 1226(c), "detention is mandatory, and a noncitizen of the United States . . . therefore is not statutorily entitled to a bond hearing."  Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023); see 8 U.S.C. § 1226(c)(1); Jennings v. Rodriguez, 583 U.S. 281, 303 (2018).

Petitioner is correct that the Ninth Circuit has held that felony false imprisonment under California Penal Code § 236 is not a categorical crime involving moral turpitude.  See Turijan v. Holder, 744 F.3d 617, 622 (9th Cir. 2014).  The Ninth Circuit explained that a violation of California Penal Code § 236 does not require any of the factors applied in circuit precedent, specifically "base, vile, and depraved conduct that shock[s] the public conscience," and § 236 "has been applied by California courts in a non-generic manner."  Id. at 621-22 (citations

omitted).  In addition, the court found more conclusive that another Ninth Circuit panel had found that simple kidnapping under California Penal Code § 207(a) is not a categorical crime involving moral turpitude.  Id. at 622.  The Ninth Circuit explained, "if the crime with which the petitioner was originally charged is not a categorical [crime involving moral turpitude], a fortiori, the lesser included offense to which he later pled guilty [felony false imprisonment]—which requires, if anything, an even lesser mens rea—is not a categorical [crime involving moral turpitude] either." Id.  The fact that petitioner was convicted of felony false imprisonment by menace is insufficient to demonstrate the conviction constitutes a categorical crime involving moral turpitude because menace is a required element for the § 236 conviction and under Ninth Circuit law, § 236 is not a categorical crime involving moral turpitude.  See Turijan, 744 F.3d at 621-22.  This Court finds that respondents have not demonstrated that petitioner's conviction for felony false imprisonment constitutes a categorical crime involving moral turpitude.

Respondents unpersuasively rely on Cornelio, 255 Cal. Rptr. at 778, an intermediate California appellate decision from 1989 that is not controlling and that was rejected by Ninth Circuit in its 2014 Turijan decision.  (See ECF No. 6 at 6.)  The state court in Cornelio addressed only an evidentiary issue--the impeachment of a defendant under California law, not a federal immigration question.  See Cornelio, 225 Cal. Rptr. at 775.  The Ninth Circuit was equally unpersuaded, noting in Turijan that

> "The BIA's unreasoned reliance on a state court decision . . . is not of great weight because it relates to the very different issue of whether a crime is morally turpitudinous for purposes of California evidence law, lacks power to persuade and thus is not entitled to deference." See [Castrijon-Garcia v. Holder,] 704 F.3d [1205,] at 1211 [9th Cir. 2013] (quotation marks omitted); see also id. at n.6 (further noting that "this is not the first time we have held a crime not to be a categorical crime of moral turpitude . . . even though California courts have held the contrary under their evidentiary standard for purposes of impeachment of a defendant") (emphasis in original).

Turijan, 744 F.3d at 621 n.3.  This Court is not persuaded by Cornelio for the same reasons. Finally, respondents also cite Saavedra-Figueroa v. Holder, 625 F.3d 621, 625-26 (9th Cir. 2010), including a parenthetical noting that misdemeanor false imprisonment under California Penal Code § 236 was not a categorical crime involving moral turpitude.  (See ECF No. 5 at 4.)

8

Respondents do not discuss or explain the relevance of Saavedra-Figueroa, which did not involve felony false imprisonment.

Accordingly, for the purposes of determining the statutory basis for detention, the government's argument that petitioner is detained pursuant to § 1226(c)(1)(A) based on his 2018 conviction for felony false imprisonment fails because this crime is not a categorical crime involving moral turpitude. See Turijan, 744 F.3d at 622.

The Court turns next to respondents' argument that petitioner's re-detention is governed by 8 U.S.C. § 1225(b).

### 3.    Section 1225(b)

This Court must decide whether petitioner, who has lived in the United States since 1999 or 2000, is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue. Petitioner argues that he is not subject to detention under 8 U.S.C. § 1225(b)(2) because petitioner was placed in standard § 1229a removal proceedings almost nine years ago and later released on bond by an immigration judge. (ECF No. 6 at 2.) 8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. On the other hand, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202. Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing." Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)). Respondents contend § 1225(b)(2) applies

///

because petitioner is an "applicant for admission" and therefore subject to mandatory detention. (ECF No. 5 at 7-8.)

This Court concludes that § 1226(a) applies to petitioner. First, immigration authorities released petitioner on his own recognizance pursuant to 8 U.S.C. § 1226 in 2017, and in July 2018, an immigration judge released petitioner on bond after finding petitioner was not a flight risk or danger to the community. (ECF No. 1 at 6, 7; ECF No. 5 at 1-2; ECF No. 5-1 at 2 (Form I-213).) Respondents do not dispute these facts. (See ECF No. 5.)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation of Sections 1225 and 1226. See, e.g., Barbosa da Cunha v. Freden, No. 25-3141, 2026 WL 1146044 (2d Cir. Apr. 28, 2026) ("Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text."); Lopez-Campos v. Raycraft, et al., 2026 WL 1283891, at *1 (6th Cir. May 11, 2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026); Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025); Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject

10

to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondents' reliance on Buenrostro-Mendez, 166 F.4th 494 and Avila, 2026 WL 819258, is unavailing. This Court does not find Buenrostro-Mendez or Avila to be persuasive, and instead finds the analysis in Castañon-Nava, 161 F.4th at 1060-62, and Barbosa da Cunha, 2026 WL 1146044, to be more persuasive. See also Lopez-Campos, 2026 WL 1283891, at *1; Hernandez Alvarez, 2026 WL 1243395; Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026); Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava, 161 F.4th at 1052); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same). As the Second Circuit explained in Barbosa da Cunha:

> Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.
>
> This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose. It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226. It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.

Barbosa da Cunha, 2026 WL 1146044 at *2.  In any event, neither Buenrostro-Mendez nor Avila are binding on this Court.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was released on his own recognizance by immigration authorities in 2017, petitioner was re-detained and released by an immigration judge on bond in July 2018, petitioner has resided in this country for over 7.5 years since his release on bond, and petitioner's April 2026 re-detention was not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  As such, petitioner should have been provided a bond hearing before his re-detention and he is entitled to relief on his statutory claim.

12

**B.    Procedural Due Process Claim (Claim Two)**

Petitioner also argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and has a liberty interest in not being arbitrarily incarcerated after prior release without a material change in circumstance and a pre-custodial hearing and notice.  (ECF No. 1 at 12, 13-14.)  Respondents argue petitioner's due process claims fail because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (ECF No. 5 at 8.)  Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due

process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's subsequent re-detention and release on bond in July 2018 after an immigration judge found he was not a danger to the community or a flight risk, are similar to parole because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over 7.5 years. (See ECF No. 1 at 6; ECF No. 5-1 at 2.)  Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482.  Petitioner is married and has three U.S. citizen children, the youngest of whom is six years old and has autism. (ECF No. 1 at 6, 7.)  Petitioner obtained work authorization from immigration authorities and was self-employed, specializing in water management and drainage solutions. (Id. at 7.)  Other courts have found that noncitizens on release on bond like petitioner have a substantial interest in remaining on bond. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (after granting preliminary injunction, granting permanent injunction from re-

14

arresting petitioner on bond unless and until provided with a pre-deprivation hearing).  This Court finds that petitioner's July 2018 release on bond and time out of custody gave rise to a constitutionally protected liberty interest.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1, 4-5 (E.D. Cal. Nov. 4, 2025); Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).  This finding is further supported by the subsequent expungement of petitioner's 2018 conviction demonstrating that the State of California found it was appropriate to relieve petitioner of the consequences of this conviction.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing

15

Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 7.5 years, petitioner was free from custody before his April 2026 re-detention. Petitioner also obtained work authorization, worked, and lived with his family. (ECF No. 1 at 6-7.) In addition, the record reflects that petitioner worked hard to improve himself following the 2018 conviction by completing fifty-two court-ordered anger management classes and paying all relevant fines, and subsequently obtaining an expungement. (ECF No. 1 at 6.) The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d at 970 (holding that petitioner had a substantial liberty interest where he was previously released on bond).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). An immigration judge released petitioner on bond in July 2018 after determining that petitioner was not a flight risk or a danger to the community. (See ECF No. 1 at 6.) In addition, in 2021, the 2018 conviction was expunged. The Court further notes that respondents do not assert that petitioner is currently detained based on the January 2024 incident and instead assert that petitioner is detained based on his 2018 conviction. (See ECF No. 5) In addition, the record suggests that petitioner has not been arrested since the 2018 arrest that led to his 2018 false imprisonment conviction. (See ECF No. 1 at 6; ECF No. 5 at 2 (referring to dropped January 2024 charge); ECF No. 5-3 at 7 (only entry after 2018 arrest and conviction is January 28, 2024 entry, which is unclear as described above); ECF No. 6-1 (January 28, 2024

16

police report and accompanying records indicate petitioner was the victim of a domestic violence incident where his spouse was arrested and where his spouse accused petitioner of sexual assault only after she was arrested).) Petitioner has been detained since April 2026, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was released on bond in July 2018 after an immigration judge determined he was not a flight risk or danger to the community, petitioner lived in the country for over 7.5 years on release, petitioner has not sustained any criminal convictions during his release, and the alleged change of circumstances (the January 2024 incident involving petitioner's wife's arrest for domestic violence) occurred almost 2.5 years ago. See Pinchi, 2025 WL 1853763, at *2; Ortega v. Bonnar, 415 F. Supp. 3d at 970 (holding that the government's interest in re-arresting the petitioner previously released on bond without a hearing is low where "[t]he allegedly material change of circumstances—the Order of Removal—occurred over a year and a half ago").

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was re-detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including

17

a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is also entitled to relief on his due process claim.

### C.      Petitioner's Other Claims for Relief

Because petitioner's statutory and due process claims provide petitioner adequate relief, this Court need not address petitioner's claims alleging violation of the Administrative Procedure Act ("APA") (claims three and four).  In the petition, petitioner also sought reasonable attorney's fees and costs. (ECF No. 1 at 19.)  Petitioner's request for attorney's fees and costs is denied without prejudice to the bringing of a properly noticed and supported motion.

### V.      REMEDY

As relief, petitioner requests immediate release from custody, and that respondents be enjoined from re-detaining petitioner unless petitioner is first provided a pre-deprivation hearing by a neutral arbiter where DHS bears the burden of proof by clear and convincing evidence that he is a danger to the community and a flight risk, and only if based on new material evidence which arose since the last bond hearing. (ECF No. 1 at 19.)  Respondents counter that if the Court grants habeas relief, the only appropriate relief is a bond hearing, not release from detention, and that petitioner should bear the burden of demonstrating he is not a danger to the community or a flight risk. (ECF No. 5 at 8.)

After petitioner pled guilty to felony false imprisonment, he was re-detained by immigration authorities on July 13, 2018.  On July 16, 2018, petitioner was released on bond by an immigration judge based on a determination that petitioner was not a danger or a flight risk.  Considering § 1226(a)'s discretionary detention framework, and the record reflects no material change in circumstance since petitioner was granted bond on July 16, 2018, after the 2018

conviction, and he has complied with all conditions of his release,[5] this Court finds that an order directing respondents to immediately release petitioner is the appropriate remedy.

**VII.    CONCLUSION**

In summary, the Court recommends that the petition for writ of habeas corpus be granted on petitioner's statutory claim (claim one) and procedural due process claim (claim two).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on petitioner's first two claims.

2. Respondents be ordered to immediately release petitioner Armando Chan May (A-213-045-700) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

3. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

---

[5] Respondents do not contend that petitioner violated any conditions of his release.  (See ECF No. 5.)

19

Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 18, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/chan3426.157.2241.imm.release

20